## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **TELCO GROUP INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **8:05CV387** |
| | ) | |
| **vs.** | ) | **REPORT** |
| | ) | **AND** |
| **AMERITRADE, INC.,** | ) | **RECOMMENDATION** |
| **ADVANCED CLEARING INC. and** | ) | |
| **AMERITRADE HOLDING CORP.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

This matter comes before the court on the plaintiff's motion for class certification (Filing No. 51). The plaintiff attached a brief and an index of evidence to its motion. The defendants filed a brief (Filing No. 60) and an index of evidence (Filing No. 61) in opposition to the motion. The parties then filed a stipulation (Filing No. 63) with regard to an undisputed issue related to the motion. The plaintiff filed a reply brief (Filing No. 66), with an attached index of evidence. With leave of court, the defendants filed a supplemental brief and evidence (Filing No. 68). On September 25, 2006, the court held an evidentiary hearing and heard oral argument from both parties. Subsequent to the hearing, the parties filed a consolidated exhibit list (Filing No. 73) and a transcript (TR.) of the hearing was filed (Filing No. 74). There was no post-hearing briefing.

## BACKGROUND

The plaintiff filed this lawsuit as a class action on behalf of all present and former customers of the defendants with an Ameritrade account from April 1, 2000, to the date of judgment. **See** Filing No. 1. The plaintiff alleges the defendant, an internet-based brokerage firm, caused losses to the proposed class members when the defendants unreasonably delayed trade executions, failed to execute trades at the best price available under the circumstances (known in the industry as the "best execution"), failed to process cancellation orders and froze customer account funds. *Id.* ¶¶ 1, 23. The plaintiff became an Ameritrade customer in 2003. *Id.* ¶ 33. Thereafter, the plaintiff made a series of online trades in January 2004, which had much longer than anticipated execution time, i.e., from

one minute to over one hour.  *Id.* ¶ 35.  The plaintiff specifically describes three trades made on January 7, 2004, January 8, 2004 and January 9, 2004, but states the plaintiff made other trades in which the defendants failed to fulfill their duty.  *Id.* ¶¶ 37-41.  The plaintiff alleges that when it determined the described trades were taking "much too long to process," the plaintiff placed cancellation orders to mitigate its damages.  *Id.* ¶ 42. However, the defendants failed to honor those orders which prevented the plaintiff from using its account funds to conduct other transactions.  *Id.*  Based on these allegations, the plaintiff asserts claims for breach of contract; violations of the Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1602; common law best execution; negligence; and breach of fiduciary duty.  On May 19, 2006, the plaintiff filed a motion to certify a class. **See** Filing No. 51.

**ANALYSIS**

Rule 23 of the Federal Rules of Civil Procedure governs the requirements for establishing and maintaining certification for a class action lawsuit.  "In order to obtain class certification, a plaintiff has the burden of showing that the class should be certified and that the requirements of Rule 23 are met."  ***Coleman v. Watt***, 40 F.3d 255, 258-59 (8th Cir. 1994) (**citing *Smith v. Merch. & Farmers Bank of W. Helena***, 574 F.2d 982, 983 (8th Cir. 1978)).

Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

**See** Fed. R. Civ. P. 23(a).  The United States Supreme Court has summarized the four basic requirements as these: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.  ***Amchem Prods., Inc. v. Windsor***, 521 U.S. 591, 613 (1997). The determination under Rule 23(a) is not perfunctory, "the court must conduct a 'rigorous

2

analysis' to ensure that the prerequisites of Rule 23 are satisfied." *Elizabeth v. Montenez*, 458 F.3d 779, 784 (8th Cir. 2006) (**quoting *Gen. Tel. Co. of the S.W. v. Falcon***, 457 U.S. 147, 161 (1982)).  "While class stipulations by the parties may be helpful, they are not complete substitutes for 'rigorous analysis.'"  *Hervey v. City of Little Rock*, 787 F.2d 1223, 1227 (8th Cir. 1986).

"Plaintiffs must meet all requirements of Rule 23(a) and fall within one of the categories of Rule 23(b) to certify their antitrust claims as a class action."  *Blades v. Monsanto Co.*, 400 F.3d 562, (8th Cir. 2005) (**citing *Amchem***, 521 U.S. at 614).  Rule 23(b) allows a class action to be maintained when (1) the prosecution of individual actions would create the risk of either (a) inconsistent adjudications or (b) adjudications for the actions of some members that, as a practical matter, dispose of or impair the ability of others to protect their own interests; (2) the party opposing the class has acted on generally the same or similar grounds with regard to the whole class, making relief appropriate to all members of the class; or (3) the court finds the questions of law or fact common to members of the class predominate over other questions affecting individual members, and the class action is superior to other methods for fair and efficient adjudication of the matter. **See** Fed. R. Civ. P. 23(b).  The plaintiff in this case seeks to certify a class pursuant to Rule 23(b)(3).

In addition to the Rule 23(a) and (b) requirements, pursuant to Rule 23(c)(1)(B): "An order certifying a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g)."  As modified in the plaintiff's reply brief, the plaintiff seeks to certify a class of

> Ameritrade customers whose trades in identified securities with Ameritrade during the Class Period of April 1, 2000 to the date of judgment in this case, and whose orders where not executed within four minutes of the time the order was placed, and which orders were ultimately executed at a price worse for the customer than the National Best Bid or Offer (NBBO)

**See** Filing No. 51-2 p. 1; amended by Filing No. 66-1 p. 2-3.  The plaintiff also excludes any trades which were not marketable when received, such as orders which specified a time for execution at the time of market opening or closing.  *Id.*

3

The plaintiff defines "identified securities" as:

> securities which at the time of execution were (a) listed on the New York Stock Exchange, (b) traded on the NASDAQ National Market System, or (c) derivative securities traded on the American Stock Exchange with respect to New York Stock Exchange listed securities, any of the NASDAQ 100 securities, or any "index" options or "index" derivatives.

**See** Filing No. 51-2 p. 1-2.

The plaintiff contends the class-wide issues based on the claims in the complaint is whether the defendants failed to provide "best execution" of trades.  Specifically, the plaintiff contends that the defendants' failure to execute trades within four minutes with respect to a highly-liquid securities is *per se* a failure of best execution.  The defendants deny class certification is appropriate due to the trade-by-trade analysis required to determine whether best execution was achieved under the particular circumstances of each trade.  The court will review, *seriatim*, each of the requirements the plaintiff must satisfy with regard to class certification.

## A.    Rule 23(a) Requirements

### 1.    Numerosity

The first prerequisite the plaintiff must meet under Rule 23(a) is numerosity. ***Amchem***, 521 U.S. at 613.  Rule 23(a) requires "the class be so numerous that joinder of all members is impracticable."  **See** Fed. R. Civ. P. 23(a)(1).  Rule 23(a) "requires only the impracticality, not the impossibility, of joinder."  ***United States Fid. & Guar. Co. v. Lord***, 585 F.2d 860, 870 (8th Cir. 1978).  The plaintiff need only show "that joining all members of the class would be difficult."  ***Caroline C. By and Through Carter v. Johnson***, 174 F.R.D. 452, 462 (D. Neb. 1996) (citations omitted).  Furthermore, the ***Caroline C.*** court noted:

> Certainly, where the class is very large – for example numbering in the hundreds – joinder will be impracticable . . . .  In light of prevailing precedent, the difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff

4

> whose class is that large or larger should meet
> the test of Rule 23(a)(1) on that fact alone.
> Newberg, **Newberg on Class Actions** § 3.05, at 3-25; **see
> also *Robidoux***, 987 F.2d at 936; ***Lockwood***, 162 F.R.D. at
> 574, 3B Moore's Federal Practice § 23.05[1], at 23-143-45 (2d
> ed.1995) ("while there are exceptions, numbers in excess of
> forty, particularly numbers in excess of one hundred . . . have
> sustained the [numerosity] requirement").

*Caroline C.*, 174 F.R.D. at 462.  Additionally, "[t]he Eighth Circuit has not established strict requirements regarding the size of a proposed class[.]"  *Estate of Mahoney v. R.J. Reynolds Tobacco Co.*, 204 F.R.D. 150, 153 (S.D. Iowa 2001) (**citing *Emanuel v. Marsh***, 828 F.2d 438, 444 (8th Cir. 1987); ***Boyd v. Ozark Air Lines, Inc.***, 568 F.2d 50, 54 (8th Cir. 1977)).

"Although mere allegations of numerosity are insufficient to meet this prerequisite, a plaintiff need not show the precise number of members in the class. . . . [Further,] where the numerosity question is a close one, a balance should be struck in favor of a finding of numerosity, since the court has the option to decertify pursuant to Rule 23(c)(1)."  *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983).  The court may rely on the pleadings to determine whether the class prerequisites have been met, however "it may be necessary for the court to probe behind the pleadings to ensure that the prerequisites of Rule 23 have been met."  *Chesher v. Neyer*, 215 F.R.D. 544, 546 (S.D. Ohio 2003) (**citing *Gen. Tel. Co. of S.W.***, 457 U.S. at 160).  A court "may consider reasonable inferences drawn from facts before [it] at the stage of the proceedings."  *Senter v. General Motors Corp.*, 532 F.2d 511, 523 (6th Cir. 1976); **see *Serfaty v. Int'l Automated Sys., Inc.***, 180 F.R.D. 418, 420 (D. Utah 1998).  Accordingly, "even where the number of persons who bought stock during the class period is unknown, numerosity can be assumed where the number of shares traded is so great that common sense dictates the class is very large."  *Grace v. Perception Techn. Corp.*, 128 F.R.D. 165, 167 (D. Mass. 1989) (citation omitted); **compare**  *O'Neil v. Appel*, 165 F.R.D. 479, 488 (W.D. Mich. 1996) (finding plaintiffs failed to meet burden of proving numerosity where "plaintiffs ask the court to engage in guesswork by presuming a large number of purchasers ('possibly hundreds') on the basis of the existence of ten million shares of outstanding common stock").

In the instant case, the plaintiff alleged Ameritrade has 3.5 million customers who execute approximately 40 million transactions annually.  The plaintiff argues that if one in one million transactions meets the Class criteria, numerosity is met.  The defendants do not dispute numerosity or ascertainability with respect to the Class as defined.  **See** Filing No. 63.  The actual number of class members could only be determined from the defendants' records, however, since the plaintiff has more than one trade which fits within the Class definition, common sense strongly suggests the Class numbers meet the numerosity requirement.  Based upon the evidence presented, the undersigned magistrate judge finds the numerosity requirement has been satisfied as to the class as a whole.

## 2.    Commonality

Second, the plaintiffs must prove the element of commonality.  ***Amchem***, 521 U.S. at 613.  Rule 23(a)(2) requires there be "questions of law or fact common to the class."  **See** Fed. R. Civ. P. 23(a)(2).  "Rule 23 is satisfied when the legal question 'linking the class members is substantially related to the resolution of the litigation.'"  ***DeBoer v. Mellon Mortgage Co.***, 64 F.3d 1171, 1174 (8th Cir. 1995) (**quoting *Paxton v. Union Nat'l Bank***, 688 F.2d 552, 561 (8th Cir. 1982)).  However, "[t]he rule does not require that every question of law or fact be common to every member of the class."  ***Paxton***, 688 F.2d at 561.  Further, commonality may be shown "where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated."  ***Paxton***, 688 F.2d at 561 (citation omitted).  One district court has stated that "the commonality requirement imposes a very light burden on the Plaintiff seeking to certify a class and is easily satisfied."  **In re *Hartford Sales Practices Litig.***, 192 F.R.D. 592, 603 (D. Minn. 1999).

The plaintiff argues it satisfies the commonality requirement because the Class shares the central legal question of whether the defendants breached their duty of best execution by failing to execute trades within four minutes.  Additionally, the plaintiff contends it is a common issue about whether the defendants' disclosures and contractual disclaimers provide any defense.  The plaintiff also contends Class members would have common issues of fact including whether the defendants engage in unreasonable delays

6

for trading on the basis of a policy, practice or wrongful conduct in executing or routing orders. The defendants do not contest whether the plaintiff has shown commonality of law and fact of class claims. Based upon the evidence presented and the parties' pleadings, the undersigned magistrate judge finds the commonality requirement has been satisfied as to the class as a whole.

### 3.    Typicality

Third, the class representatives have the burden to show typicality of their claims in relation to the other putative members of the class. ***Amchem***, 521 U.S. at 613. Rule 23(a) requires that the named plaintiff has claims or defenses which "are typical of the claims or defenses of the class." **See** Fed. R. Civ. P. 23(a)(3). The Eighth Circuit, "long ago defined typicality as requiring a demonstration that there are other members of the class who have the same or similar grievances as the plaintiff." ***Chaffin v. Rheem Mfg. Co.***, 904 F.2d 1269, 1275 (8th Cir. 1990) (internal quotations and citations omitted). "[F]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." ***Beck v. Maximus, Inc.***, 457 F.3d 291, 296 (3d Cir. 2006) (citations omitted and alteration in original); **see** ***Alpern v. UtiliCorp United, Inc.***, 84 F.3d 1525, 1540 (8th Cir. 1996). The burden to establish typicality is "fairly easily met so long as other class members have claims similar to the named plaintiff." ***DeBoer***, 64 F.3d at 1174. However, the plaintiff cannot show typicality where the question of liability can only be ascertained on an individualized inquiry for each class member. ***Parke v. First Reliance Standard Life Ins. Co.***, 368 F.3d 999, 1004-05 (8th Cir. 2004) (denying class certification for denial of disability insurance benefits).

The plaintiff contends it engaged in trades which are sufficiently typical of the class and that liability and damages can be ascertained using testimony and methods applicable to all class claims. The plaintiff contends failure to execute a trade within four minutes of receiving the order constitutes a failure of best execution. The plaintiff argues the defendants would be liable for this failure of best execution, assuming a deviation of execution price from the NBBO, if the defendants neglected to route (or re-route) the trade

to a market center without unreasonable delay such that the trade could be executed within four minutes.  The plaintiff admits, however, the court may not be able to determine at this time whether the defendants had a reasonable explanation for failure to immediately route a particular trade (TR. 67-68).

The plaintiff's expert, Robert W. Lowry states:  "It is my opinion that if a broker dealer does not route customer orders to the appropriate market, so as to obtain execution within the four minute period set forth in Plaintiff's Detailed Statement, it has not met its Best Execution and order handling obligations."  **See** Exhibit No. 8 at Filing No. 66-2 - Lowry Aff. p. 7.  The plaintiff's Detailed Statement describes the four-minute period as orders "not executed within four minutes of the time the order was placed."  **See** Filing No. 51-2 ¶ 1. Mr. Lowry further opined that a broker dealer should compensate a customer if there is a delay in routing the customer orders to the appropriate market or a failure of providing the best available price.  **See** Filing No. 8 at Filing No. 66-2 - Lowry Aff. p. 7-8.  Mr. Lowry states that broker dealers must establish and maintain reasonable internal procedures to assure sufficient computer capacity to handle customer order flow and minimize computer system failure.  *Id.* p. 8.  The plaintiff alleges any of the defenses used against the plaintiff would be typical of the class.

The defendants deny that the plaintiff can show typicality.  The defendants contend that only by examining each trade, and depending on the circumstances surrounding each trade, can there be a determination of liability related to each class member.  The defendants argue a trade-by-trade analysis is required because best execution cannot be determined based on the timing and price of the trade alone, but necessarily must include an inspection of several factors including available prices, price improvement opportunities, order size, market center liquidity, order type, security type, costs of accessing competing market centers, and market center reliability and error rates, among others.  The defendant's expert, Allan W. Kleidon, also explains that an "individualized analysis would be required to determine which entity in the chain of the execution process was at fault if best execution did not occur."  **See** Exhibit 50 at Filing No. 68-6 Kleidon Aff. ¶ 6. Furthermore, the defendants contend that the plaintiff is especially atypical compared to other potential class members because the plaintiff's trades were larger in size and dollar

value than the usual kinds of trades placed by Ameritrade customers.  Similarly, the defendants contend the plaintiff is atypical because it is subject to the unique defense that the plaintiff failed to comply with a written objection clause contained in its contract with Ameritrade.

The defendants assert a review of the plaintiff's trades make it clear that trade-by-trade analysis is required for all putative class member trades.  The defendants show that the plaintiff has nine trades comprising 32 executions which arguably fall within the class definition.  **See** Exhibit 50 at Filing No. 68-6 Kleidon Aff. ¶ 7.  However, each of the 32 executions are later parts of a multi-part execution, such that parts of each order do not fall within the class definition.  **Id.**  Of the plaintiff's trades, eight trades (31 executions) were limit orders, which are orders specifying the maximum purchase price, or minimum sale price, at which a trade may be executed.  **See** Exhibit 33 at Filing No. 61-27 Kleidon Aff. ¶ 9.  These eight limit orders were initially executed rapidly, but could not be completed at the price requested for the number of shares requested within four minutes, because of a market price change after execution of the order for the initial purchase of available shares. **See** Exhibit 50 at Filing No. 68-6 Kleidon Aff. ¶¶ 8-9.  Outside the four-minute time frame, additional shares became available at the requested price and the trade execution was completed.  **Id.** ¶ 9.  Mr. Kleidon explains that with regard to the plaintiff's eight trades, the entire order was not "marketable" at the limit price at the time of order receipt.  **Id.** ¶ 11.  Accordingly, the "delay" in execution was caused by the inability to execute the order at the limit price.  **Id.**  Further, since the order was executed at the limit price as requested, albeit in a longer time period, there was no failure of best execution.  **Id.**  Furthermore, each of the eight trades were routed to a market center within one second of the order being placed.  **See** Exhibit 45 at Filing No. 61-28 Graph titled Exhibit 12 to Mr. Kleidon's Aff.

With regard to the ninth trade, the order was for a short sale of 300,000 shares of QQQ at 11:40:25 a.m.  **See** Exhibit 50 at Filing No. 68-6 Kleidon Aff.  ¶ 12; Exhibit 45 at Filing No. 61-28 Graph titled Exhibit 12 to Mr. Kleidon's Aff.  The order was routed at 11:42:36.  **Id.**  The quoted national best bid (NBB) price when the order was received was for 9,500 shares.  **Id.**  However, the order was executed, at 11:44:20 a.m., as to 100,000 shares at a price above the bid price.  **Id.**  The remaining 200,000 shares were executed

at 11:44:38 a.m. for two cents below the NBB price at the time of execution. *Id.* Mr. Kleidon states there is no evidence the plaintiff did not receive best execution for the trade. *Id.* However, to determine whether there was a failure of best execution, Mr. Kleidon explains the parties would have to examine the reason for delay by the defendants and the approximately two-minute time frame it took the market center to execute the order. **See** Exhibit 33 at Filing No. 61-27 Kleidon Aff. ¶ 61. Mr. Kleidon explains the approximately two-minute delay by the defendants was caused by the need to manually validate the plaintiff's $11 million sale, in order to minimize the risk to Ameritrade. *Id.* There is no evidence in the record about the non-party market center's activities.

Additionally, Mr. Kleidon states there is a three-cent *de minimus* rule applied by the SEC to trades in QQQ. **See** Exhibit 50 at Filing No. 68-6 Kleidon Aff. ¶ 12. The three-cent *de minimus* rule allows some deviation of the execution price from the best price available, holding such deviation does not constitute failure to achieve best execution. **See** Exhibit 33 at Filing No. 61-27 Kleidon Aff. ¶ 44.

Finally, the defendants contend the NBBO cannot be used as a measure for class-wide liability or damages. The highest bid across all linked market centers for a particular stock comprises the national best bid (NBB), and the lowest offer comprises the national best offer (NBO). **See** Exhibit 33 at Filing No. 61-27 Kleidon Aff. ¶ 15. Together, the national best bid and offer (NBBO) define the inside spread for a stock and the NBBO sizes consist of the total numbers of shares committed for trade at the national best bid or offer. *Id.* If a customer's order quantity exceeds the quoted size, there is no commitment in the market to execute that order at the prevailing NBBO price. *Id.* Mr. Kleidon explained that the best price a seller of a large block of shares (over 10,000 shares or $200,000) can expect is often below the NBB, because that NBB is guaranteed only for the size committed at the quoted price. *Id.* ¶¶ 16-19.

As an initial matter, "a proposed class representative is not typical if the proposed representative is subject to a unique defense that threatens to play a major role in the litigation." **See *Hanon v. Dataproducts Corp.*,** 976 F.2d 497, 508 (9th Cir. 1992). It is unclear whether the alleged "unique" defenses would apply to all class members or primarily to the plaintiff's claims, overwhelm the litigation or become the main focus. **See**

*Hanon*, 976 F.2d at 508 (citing cases).  Although, the defendants may have a unique defense against the plaintiff with regard to the failure to file a written objection, such defense does not defeat the typicality of the plaintiff's claims.  **See *Morris v. Wachovia Sec. Inc.***, 223 F.R.D. 284, 295 (E.D. Va. 2004) (noting "differences in the claimed damages or the availability of certain defenses do not defeat typicality, as long as the class claims are generally based on the same legal or remedial theory").  However, the plaintiff otherwise fails to meet its burden of showing typicality.

The duty of best execution "requires a broker-dealer to use reasonable efforts to maximize the economic benefit to the client in each transaction." ***Newton v. Merrill Lynch, Piece, Fenner & Smith***, 259 F.3d 154, 173 (3d Cir. 2001) (***Newton II***).  The plaintiff is not typical of the class where the type and nature of the plaintiff's interests would be different from those of the class. ***In re Milk Prods. Antitrust Litig.***, 195 F.3d 430, 436-37 (8th Cir. 1999).  In **Milk Products**, the Eighth Circuit found the plaintiff was atypical where the nature of sales to the proposed class members were different in size and pricing when compared to sales to the plaintiff.  ***Id.*** at 437.  Similarly, where there are widely varying circumstances in each individual case impacting alleged liability, the plaintiff cannot show typicality.  **See *Parke***, 368 F.3d at 1004-05; ***Coleman v. Watt***, 40 F.3d 255, 259 (8th Cir. 1994).

The plaintiff seeks to place an upper time limit on the amount of time from order placement to execution to be considered best execution.  The plaintiff states it does not mean to imply that a trade made within four minutes was made with best execution, but that any trade taking longer than four minutes was not a best execution.  However, the plaintiff acknowledges that the definition of best execution is "the best price available under the circumstances." **See** Filing No. 1. ¶ 1.  The relevant trades made by the plaintiff are evidence of why this matter is not appropriate for class status because each claim of the putative class would be subject to varying proof, as are the plaintiff's trades.  The bulk of the plaintiff's relevant trades are limit orders.  The defendant provides evidence that the nature of the plaintiff's limit orders and other dynamic market conditions caused the delay in execution, rather than some unreasonable conduct of the defendants. The plaintiff argues that if the court finds limit orders should not fall within the class definition, then

those types of orders should be excluded leaving the remaining class issues (TR. 69). However, a determination of reasonableness must be made for each trade, at issue, regardless of the merits of the plaintiff's claims. Additionally, the plaintiff's only remaining trade which falls within the class definition is atypically large and not necessarily eligible for the NBBO. Further, an evaluation of the plaintiff's specific trades shows there may be arguments that some delays proved beneficial to putative class members who would have suffered a loss, or additional loss, if trade execution had taken place within four minutes. Accordingly, the plaintiff has failed to meet its burden of showing its claims are typical of those of the putative class because there are widely varying circumstances for each trade.

### 4.    Adequacy of Representation

The fourth prerequisite a plaintiff must meet under Rule 23(a) for class certification is adequacy of representation. ***Amchem***, 521 U.S. at 613. Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." **See** Fed. R. Civ. P. 23(a)(4). "The focus of Rule 23(a)(4) is whether: (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." ***Paxton***, 688 F.2d at 562 (**citing *Gonzales v. Cassidy***, 474 F.2d 67, 72 (6th Cir. 1973)).

In the instant case, the plaintiff alleges it has sustained substantial losses which gives it a substantial interest in pursuing a class action. Further, the plaintiff argues its officers have the sophistication to understand and participate in Class decisions on an ongoing basis. Additionally, the plaintiff contends there is no conflict between its interest and those of the Class. Finally, the class representatives show they have qualified counsel with experience representing plaintiffs in securities class action lawsuits. **See** Filing No. 51-8, Exhibit 6. The defendants do not challenge the plaintiff's or plaintiff's counsel's adequacy to represent the Class.

The court has reviewed the evidence presented and finds the plaintiff has common interests with the proposed members of the Class, under the definition of the claim used by the plaintiff, and sufficient interest in prosecuting the matter on behalf of the class. The

plaintiff's counsel also appears qualified. Thus, the undersigned finds the plaintiff and its counsel will fairly and adequately protect the interests of the class, thus meeting the adequacy of representation element under Rule 23(a)(4).

## B.    Rule 23(b)(3) Requirements

For class certification, the plaintiff must also prove that this action may be maintained under Rule 23(b)(1), (2), or (3).  *Amchem*, 521 U.S. at 614.  The plaintiff has moved to do so under Rule 23(b)(3).  Under Rule 23(b)(3), the court must find "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  **See** Fed. R. Civ. P. 23(b)(3).  "The requirements of 'predominance' and 'superiority' are stated in Rule 23(b)(3) in the conjunctive; both must be present for an action to be maintained under that provision."  ***Bryant v. Bonded Accounts Serv./Check Recovery***, 208 F.R.D. 251, 261 (D. Minn. 2000).

### 1.    Predominance

As to the first prong of the inquiry, the Supreme Court has ruled the "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at 623 (**citing** 7A Wright, et al., ***supra***, § 1777, at 518-519 n.19).  "In order to 'predominate,' common issues must constitute a significant part of the individual cases."  ***Jenkins v. Raymark Indus., Inc.***, 782 F.2d 468, 472 (5th Cir. 1986).  "Where there is an essential factual link between all class members and the defendants, for which the law provides a remedy, questions of law or fact common to the class exist."  ***D'Alauro v. GC Servs. Ltd. P'Ship***, 168 F.R.D. 451, 458 (E.D.N.Y. 1996) (citation omitted).  Furthermore, "when one or more of the central issues in the action are common to the class and can be said to predominate, the action will be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately." 7A Wright, et al., ***supra***, § 1778.

13

> The nature of the evidence that will suffice to resolve a question determines whether the question is common or individual.  If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question.

***Blades v. Monsanto Co.***, 400 F.3d 562, (8th Cir. 2005).

The defendants contend class issues do not predominate due to the trade-by-trade analysis required for each putative class member.  As discussed above with respect to the typicality element the plaintiff must meet under Rule 23, the undersigned finds the issues of whether the defendants' conduct was unreasonable constitutes the most significant part of the plaintiff's case.  The plaintiff has failed to show there is an essential link among all putative class members with regard to either unreasonable conduct or liability based on harm.

This matter is similar to the issues raised in ***Newton II***, because the individual issues in this matter overwhelm any common issues.  **See *Newton II***, 259 3d. at 187.  In ***Newton II***, the issue of whether each class member sustained economic injury was paramount after the court determine class-wide loss could not be presumed.  ***Id.***  Injury could not be presumed merely because automated execution of orders were at the NBBO listed price. ***Id.***  It was necessary to determine injury on a trade-by-trade basis because a trade at the NBBO may or may not result in damages.  ***Id.***  Specifically, injury could only be determined if a particular trade failed to receive the best reasonably available price.  ***Id.***  Further, such analysis "may require a factual inquiry into all of the surrounding circumstances" of a particular trade.  ***Id.*** (**quoting *Newton v. Merrill, Lynch, Piece, Fenner & Smith***, 135 F.3d 266, 270 (3d Cir. 1998) (***Newton I***).

Here, the harm complained of cannot be determined by use of blanket analysis on putative class member's accounts.  Although the plaintiff, and possibly others, may have received a lower than NBBO price for trades which took longer than four minutes to execute, taking as true the substantive allegations of the complaint, these factors alone cannot be exclusively used to determine liability against the defendants.  Based on the

14

nature of the plaintiff's claim, the court cannot conclude a particular course of conduct by the defendants gives rise to liability for each class member. The court would have to make a trade-by-trade analysis of each putative class member's account to determine liability for failure to execute trades at the best reasonably available price. Accordingly, the plaintiff has failed to show class claims predominate over individual issues.

### 2.    Superiority

For the second prong of the Rule 23(b)(3) inquiry, the class action must be "superior to other available methods for the fair and efficient adjudication of the controversy." **See** Fed. R. Civ. P. 23(b)(3). "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy. Having to engage in separate threshold inquiries for each class member prior to reaching the common issues does not promote such economy. . . . [It] will create judicial <u>dis</u> economy." *Estate of Mahoney*, 204 F.R.D. at 161 (**quoting** *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996); *Smith v. Brown & Williamson Tobacco Corp.*, 174 F.R.D. 90, 94 (W.D. Mo. 1997)).

The plaintiff contends there can be no serious question that a class action is a superior method of adjudication because the class could number in the millions, with each member having to present the same testimony and undertake the expense of individualized computer analysis. **See** Filing No. 66-1, p. 8. In contrast, the defendants allege that as a class action this matter would be unmanageable due to the number of individualized issues. Additionally, the defendants contend that each Ameritrade member agreed to arbitrate any disputes and such arbitration process is a reasonable alternative at a lower cost to the class members. The defendants represent that these arbitrations can come before panels composed of industry experts and lay people, can be prosecuted *pro se*, can be conducted based upon written submissions for small claims, permit certain discovery, allow use of subpoena powers, authorize money awards, and can result in awards of attorneys' fees to the prevailing party. **See** NASD Code of Arbitration Procedure Rules 10302 (simplified arbitration), 10308 (arbitrators), 10316 (representation by counsel), 10321 (discovery), 10322 (subpoena power), 10330 (money awards).

The undersigned finds resolution of the claims, at least as to the liability of the defendants to each individual class member, through a class action would, under the circumstances, be an inefficient allocation of judicial resources.  A class action is not a superior method of resolution of the issues compared to individual arbitration or litigation because of the individualized nature of the claims and defenses, as described above. Arbitration, an alternative to class action in this case, would be superior to class litigation.

**C.     Preemption**

In the alternative, the defendants assert the plaintiff's state law securities fraud claims are preempted by the Securities Litigation Uniform Standards Act of 1998 (SLUSA). Specifically, SLUSA amended the Securities Act of 1933 and the Securities Exchange Act of 1934 to preempt class-action securities fraud suits brought under state law.  **See *Dudek v. Prudential Sec.*,** Inc., 295 F.3d 875, 877 (8th Cir. 2002).  However, the plaintiff disavows any fraud claims against the defendants.  The court finds no allegations of fraud forming the basis of the plaintiff's proposed class claim.  Accordingly, the defendants' argument under SLUSA must fail.  Upon consideration,

**IT IS RECOMMENDED TO CHIEF JUDGE JOSEPH F. BATAILLON that:**

The plaintiff's motion for class certification (Filing No. 51) be denied.

**ADMONITION**

Pursuant to NECivR 72.3 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) business days after being served with a copy of this Report and Recommendation.  Failure to timely object may constitute a waiver of any objection.  The brief in support of any objection shall be filed at the time of filing such objection.   Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 6th day of November, 2006.

BY THE COURT:

 s/Thomas D. Thalken
United States Magistrate Judge

16